**Robert B. REICH, Secretary of Labor, Petitioner,**

v.

**CONTRACTORS WELDING OF WESTERN NEW YORK, INC., Respondent.**

No. 1501, Docket 92–4181.

United States Court of Appeals, Second Circuit.

Argued May 10, 1993.

Decided June 24, 1993.

Charles ·F. James, Atty., Washington, DC (Judith E. Kramer, Deputy Sol., Joseph M. Woodward, Associate Sol. for Occupational Safety and Health, Barbara Werthmann, Counsel for Appellate Litigation, U.S. Dept. of Labor, Office of the Sol., Washington, DC, of counsel), for petitioner.

Before: MINER, McLAUGHLIN and FRIEDMAN,* Circuit Judges.

* The Hon. Daniel M. Friedman, of the United States Federal Circuit, sitting by designation.

MINER, Circuit Judge:

Petitioner Robert B. Reich, the Secretary of Labor, ("Secretary") petitions for review of a portion of a decision issued by the Occupational Safety and Health Review Commission ("Commission") dated August 6, 1992. In the portion of its decision, which is the subject of the petition, the Commission declared as "valid precedent" the analysis underlying its September 6, 1991 decision vacating an administrative law judge's ("ALJ") finding of an Occupational Safety and Health Administration ("OSHA") safety regulation violation. This Court had remanded the case to the Commission with instructions to proceed in accordance with the parties' settlement agreement, which provided for vacatur of the decision of September 6. The Secretary requests enforcement of our mandate in its entirety. For the reasons set forth below, we grant the petition for review, vacate the Commission's August 1992 order and remand to the Commission with instructions to vacate its September 1991 order in its entirety and for all purposes.

## BACKGROUND

In July of 1988, an OSHA compliance officer inspected a worksite where respondent Contractors Welding of Western New York, Inc. ("Contractors") was repairing the Ferry Street Bridge, a metal drawbridge, in Buffalo, New York. The compliance officer observed two welders standing on the edge of an abutment, working above water on an understructure of the drawbridge. Since the water was fifteen to twenty feet deep and the welders were wearing heavy clothes and boots, the compliance officer considered that the workmen were at risk of drowning for lack of appropriate safety gear. Because the welders were not wearing life vests and the compliance officer reported that other floatation devices such as ring buoys were not readily available at the worksite, the Secretary issued a citation alleging violations of OSHA safety standards. Item One of the citation charged Contractors with violating 29 C.F.R. § 1926.106(a) (1992), which requires that "[e]mployees working over or near water, where the danger of drowning

exists, shall be provided with U.S. Coast Guard-approved life jacket or buoyant work vests." Item Two charged Contractors with violating 29 C.F.R. § 1926.106(c), which requires that "[r]ing buoys with at least 90 feet of line shall be provided and readily available for emergency rescue operations." Item Three charged Contractors with violating 29 C.F.R. § 1926.106(d), which requires that "[a]t least one life-saving skiff shall be immediately available at locations where employees are working over or adjacent to water." The Secretary proposed a penalty of $480 for each violation.

Contractors challenged the citation and the proposed penalties, and a hearing was held before an ALJ appointed by the Commission. Contractors argued, *inter alia*, that sections 1926.106(a) and (c) did not apply because the employees observed by the compliance officer were wearing life belts with lanyards attached to the bridge structure. In a decision dated February 2, 1990, the ALJ found violations of 29 C.F.R. §§ 1926.106(a), (c) and (d) and imposed a penalty of $480 for each violation.

The Commission directed a review of so much of the ALJ's decision as found violations of sections 1926.106(a) and (c). The review was directed pursuant to section 12(j) of the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 661(j) (1988), which provides that the report of the ALJ becomes "the final order of the Commission within thirty days after such report ... unless within such period any Commission member has directed that such report shall be reviewed by the Commission."

In a decision dated September 6, 1991, the Commission vacated the portion of the ALJ's decision that found a violation of section 1926.106(a) (the life vest requirement) and affirmed the portion of the ALJ's decision that found a violation of § 1926.106(c) (the ring buoy requirement). *See Secretary of Labor v. Contractors Welding of W.N.Y., Inc.,* 15 OSHC (BNA) 1249 (Sept. 6, 1991). In vacating the finding of the section 1926.-106(a) violation, the Commission examined and rejected the Secretary's interpretation of the regulation. Section 1926.106(a) provides: "Employees working over or near water,

where the danger of drowning exists, *shall be provided* with U.S. Coast Guard-approved life jacket[s] or buoyant work vests." (emphasis supplied). The Secretary did not dispute that Contractors had the life vests available at the worksite; however, the Secretary interpreted the safety standard as requiring that the vests be *used* rather than just *made available.* The Commission found that the Secretary's interpretation of the regulation was unreasonable and that the regulation's requirement that life vests be provided did not mean that they must be worn at all times. The Commission found that the term "provide" was not ambiguous and that its plain meaning should be applied—"shall be provided" should be read as requiring only that life vests be furnished or made available. *See* 15 OSHC (BNA) at 1250–51.

On October 31, 1991, the Secretary and Contractors petitioned this Court, pursuant to 29 U.S.C. § 660, for review of the Commission's order. While the petition was pending before us, the parties agreed to a settlement of citation Items One and Two (the life vest and ring buoy violations), conditioned upon vacatur of the Commission's September 1991 order.[1] As part of the settlement agreement, the Secretary stipulated that the two employees observed working on the bridge structure from the edge of the abutment were wearing safety belts with lanyards attached to the bridge structure. The parties agreed that the use of safety belts and lanyards by the employees rendered the regulations provided for in 29 C.F.R. §§ 1926.106(a) and (c) inapplicable on the record of this case. Because the life vest and ring buoy regulations were inapplicable based upon the stipulated facts, the settlement agreement provided that the Secretary would withdraw the citation with respect to the violations of those safety standards upon execution of the agreement.

The parties discussed their settlement agreement, including vacatur of the Commission's decision, in a pre-argument conference with staff counsel for the Second Circuit. Staff counsel advised the parties to follow the approach outlined in *Nestle Co. v. Chester's Market, Inc.,* 756 F.2d 280 (2d Cir.1985). In accordance with *Nestle,* the parties agreed to present their settlement agreement initially to the Commission for approval. The parties filed a joint stipulation withdrawing the appeal, subject to reinstatement within fifteen days after the Commission refused to vacate, or by March 17, 1992, whichever date was earlier.

On March 3, 1992, the parties filed with the Commission a joint motion to approve their settlement and to vacate the Commission's September 1991 order. The parties included a citation to the *Nestle* decision to support their decision to bring the motion initially before the Commission rather than before this Court. In an order dated March 10, 1992, the Commission construed the motion solely as one for reconsideration of a final order and concluded that it lacked jurisdiction to consider the motion because the joint stipulation withdrawing the appeal did "not contain any language directing the Commission to reconsider its decision or remanding the case to the Commission for that purpose." *Secretary of Labor v. Contractors Welding of W.N.Y., Inc.,* OSHRC Docket No. 88–1847, at 1–2 (Mar. 10, 1992). In the absence of such a directive, the Commission found *Nestle* to be inapplicable: "The *Nestle* decision ... is distinguishable because the court in that case had issued an order remanding the matter to the district court expressly to allow the district court to consider the parties' motion to set aside its decision." *Id.* at 2. In addition, the Commission noted that "while *Nestle* applied F[ed].R.Civ.P. 60(b) as grounds for vacating the lower court's decision, the Secretary in two cases pending before us has taken the position that Rule 60(b) does not confer jurisdiction on the Commission to reconsider a final order." *Id.* The Commission deferred its ruling until the jurisdictional issue was "properly briefed and fully examined." *Id.*

On March 17, 1992, the Secretary reinstated the appeal pursuant to the terms of the

---

1. The parties' settlement agreement only makes passing reference to Item Three of the citation and the ALJ's finding of a violation of section 1926.106(d). Because Contractors has not peti-tioned this Court, pursuant to 29 U.S.C. § 660(a), for review of the finding, we assume that Contractors no longer challenges that finding.

stipulation of withdrawal. The Secretary and Contractors then filed a "Joint Motion to Dismiss Appeal and to Remand Case to Commission with Instructions to Vacate." In an order filed on May 19, 1992, we granted the parties' joint motion and ordered that the case be "remanded for further proceedings before the Commission in accordance with the parties' settlement agreement." Our mandate was issued on May 21, 1992.

In a decision dated August 6, 1992, the Commission vacated the part of its prior decision that had affirmed the finding of a violation of 29 C.F.R. § 1926.106(c). In the same decision, the Commission amended the part of its prior decision that had vacated the finding of a violation of 29 C.F.R. § 1926.-106(a). In the amendment, the Commission noted that the citation was withdrawn as to this violation and that the part of the decision vacating the finding therefore was moot. The Commission stated: "While the decision on the 1926.106(a) item is now moot, we believe that the analysis of the issue presented is correct.... [W]e conclude that our decision still constitutes valid precedent and may be relied on in future arguments to the Commission." *Secretary of Labor v. Contractors Welding of W.N.Y., Inc.*, 15 OSHC (BNA) 1874, 1876 (Aug. 6, 1992).

The Secretary has petitioned for enforcement of our May 19, 1992 mandate remanding for further proceedings in accordance with the parties' settlement agreement. He asks that we order the Commission to vacate its September 1991 decision *for all purposes*, thereby eliminating any precedential effect of the decision. We have jurisdiction to review and correct a decision of the Commission under section 11(b) of the Act, 29 U.S.C. § 660(b), which permits the Secretary to obtain review in this Court "of any final order of the Commission" concerning alleged violations of the Act and regulations committed in this Circuit.

## DISCUSSION

When the Secretary has advised the Commission that an employer has contested a citation issued by the Secretary and when the Commission has afforded an opportunity for a hearing before an ALJ, the Commission has the authority to "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief." 29 U.S.C. § 659(c) (1988). From this statutory language, it appears that the Commission may consider only controversies that arise from the issuance of a citation by the Secretary. Here, the Secretary withdrew his citation against Contractors as part of the settlement agreement. In the absence of a citation by the Secretary and in light of the settlement agreement, there was nothing left for the Commission to affirm, modify or vacate. Thus, we must consider whether the Commission had the authority to issue an advisory opinion.

We have found no authority in the Act, the case law or the Department of Labor regulations to support the proposition that the Commission has the power to issue an advisory opinion. *See Martin v. OSHRC*, 499 U.S. 144, ——, 111 S.Ct. 1171, 1178, 113 L.Ed.2d 117 (1991) ("Congress intended to delegate to the Commission the type of non-policymaking *adjudicatory powers typically exercised by a court* in the agency-review context." (emphasis supplied)); *Cuyahoga Valley Ry. v. United Transp. Union*, 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985) (per curiam) ("The Commission's function is to act as a neutral arbiter and determine whether the Secretary's citations should be enforced over employee or union objections. Its authority plainly does not extend to overturning the Secretary's decision not to issue or to withdraw a citation."); *Donovan v. OSHRC*, 713 F.2d 918, 930–31 (2d Cir.1983) ("Congress gave the Commission the 'relatively limited role of administrative adjudication,' ... with no direct policymaking functions.... [O]nce an employer withdraws its notice of contest, as part of a settlement agreement with the Secretary, the Commission is ousted of jurisdiction over matters related to the alleged violation." (citation omitted)); *Secretary of Labor v. Wyman–Gordon Co.*, 15 OSHC (BNA) 2200 (Jan. 11, 1993) (the Commission vacated its prior decision in accordance with the First Circuit's order, after it initially had retained a portion of the prior decision's analysis as

precedent); 29 C.F.R. §§ 2200.90, 2200.91, 2200.92. The regulatory scheme indicates that the Commission's function is to review ALJ decisions, which include "order[s] affirming, modifying or vacating each contested citation item and each proposed penalty, or directing other appropriate relief." 29 C.F.R. § 2200.90(a). Moreover, there are no regulations that provide for or refer to any independent rulemaking authority granted to the Commission. *See id.* §§ 2200–400. Absent such authority, the Commission improperly preserved the underlying reasoning of its vacated order as valid precedent.

In its August 6, 1992 decision, the Commission justified the preservation of its reasoning as precedent on the ground that "[t]he Commission was created by the Congress as a single agency with nationwide jurisdiction in order to establish a uniform body of law that would afford consistency in the adjudication of cases arising under the [Act]." 15 OSHC at 1875–76. The Commission further articulated its concern that "if the Secretary were to appeal adverse decisions solely for the purpose of entering into settlement agreements to eliminate the binding effect of our precedent, that practice could frustrate this congressional objective." *Id.* at 1876.

First, the fact that the Commission has nationwide jurisdiction does not free it from the confines of Second Circuit precedent. *See Stieberger v. Bowen,* 801 F.2d 29 (2d Cir.1986) (Secretary of Health and Human Services cannot refuse to follow circuit precedent under the doctrine of nonacquiescence); *Ithaca College v. NLRB,* 623 F.2d 224, 228 (2d Cir.) (rejecting NLRB's argument that, because the NLRB was an agency with nationwide jurisdiction, the doctrine of nonacquiescence permitted the agency to decide whether it would follow Second Circuit precedent), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980). Second, the Commission cannot overcome its lack of jurisdiction to review an issue once the Secretary has withdrawn the citation and we have approved the settlement agreement that provided for the withdrawal. *Cf. Donovan,* 713 F.2d at 931. Third, the Commission cited no authority to explain why its policy concern for uniformity should outweigh its policy con-

cern for encouraging settlement. *See* 29 C.F.R. § 2200.100(a) ("Settlement is permitted and encouraged by the Commission at any stage of the proceedings."). Moreover, the Commission's rationale for preserving the precedential value of its vacated decision failed to give adequate weight to the precedent of our Circuit that strongly promotes settlement. *See Nestle,* 756 F.2d at 282–84 (reversing district court's refusal to vacate a judgment in a trademark infringement case following a settlement, reached pending appeal and conditioned upon vacatur, this Court having concluded that the interest in settlement outweighed the policy considerations of finality of judgments and adjudication of trademark validity).

The Commission's preservation of its analysis in the course of designating its finding as moot also is at odds with Supreme Court precedent. In the context of unreviewed administrative orders that have been mooted, the Supreme Court has held that vacatur of the unreviewed decision was appropriate:

In *United States v. Munsingwear, Inc.* ... this Court expressed the view that a party should not be concluded in subsequent litigation by a District Court's resolution of issues, when appellate review of the judgment incorporating that resolution, otherwise available as of right, fails because of intervening mootness. We there held that that principle should be implemented by the reviewing court's vacating the unreviewed judgment below. We think the principle enunciated in *Munsingwear* at least equally applicable to unreviewed administrative orders, and we adopt its procedure here.

*A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 329, 82 S.Ct. 337, 340–41, 7 L.Ed.2d 317 (1961) (citation and footnote omitted).

In *Tennessee Gas Pipeline Co. v. Federal Power Commission,* 606 F.2d 1373 (D.C.Cir. 1979), the D.C. Circuit applied the procedure set forth in *Munsingwear* and adopted in *Mechling.* The court vacated both the order and the reasoning of a Federal Power Commission ("FPC") adjudication that it declined to review on mootness grounds because "it would be unfair to leave Tennessee thus un-

der the pall of an unreviewed administrative order, particularly if there were no assurance that judicial review would ultimately be available other than in an enforcement proceeding" and "to assure [the Commission's orders] do not collaterally affect other matters arising from the past curtailment." *Id.* at 1382–83. For the same reasons, we think that the Commission's analysis here also should not be permitted to retain any precedential effect.

Finally, we find that the Commission actually disregarded our mandate because our order approving the settlement necessarily indicated that the decision should be vacated in its entirety, leaving the decision without precedential value. In *City of Cleveland, Ohio v. Federal Power Commission,* 561 F.2d 344, 346 (D.C.Cir.1977), the D.C. Circuit held:

> The decision of a federal appellate court establishes the law binding further action in the litigation by another body subject to its authority. The latter "is *without power to do anything which is contrary to either the letter or spirit of the mandate ...*" and the higher tribunal is amply armed to rectify any deviation through the process of mandamus. "That approach," we have said, "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision." *These principles, so familiar in operation within the hierarchy of judicial benches, indulge no exception for reviews of administrative agencies.*

(emphasis supplied) (footnotes omitted). In *City of Cleveland,* the City argued that the FPC violated the terms of the court of appeals' mandate by interpreting the mandate too narrowly. In granting the City's motion for an order directing full compliance with the mandate, the D.C. Circuit reasoned that "[t]he mandate rule ... is a specific application of the doctrine commonly known as the law of the case," which " 'when used to express the duty of a lower court to follow what has been decided by a higher court at an earlier stage of the case, applies to everything decided, either expressly or by necessary implication.' " *Id.* at 348 (footnotes omitted).

Although the *City of Cleveland* court addressed the merits of the FPC's ruling, we find the D.C. Circuit's reasoning to be equally applicable here. In this case, the Secretary and Contractors reached a settlement agreement conditioned upon vacatur of the Commission's September 1991 decision. Since we expressly ordered the remand proceedings to be "in accordance with" the settlement agreement, we find that the Commission violated both the letter and the spirit of our mandate by attempting to retain the reasoning of the prior decision as precedent.

### CONCLUSION

We grant the petition for review, vacate the Commission's August 6, 1992 order and remand to the Commission with instructions to vacate its September 6, 1991 order in its entirety and for all purposes.